## Farmers' and Mechanics' Bank *against* Little.

8ws207
196  640

8 WS 207
203    ²113

In foreign attachment against a corporation as defendant, the civil death of the corporation before judgment against it, produced by the decree of forfeiture of its charter by a judicial tribunal, dissolves the attachment.

The garnishee may take advantage of this by pleading it, notwithstanding judgment had been entered against the defendant for default of appearance.

Such decree of a court forfeiting a charter, made before judgment signed in the foreign attachment, appealed from by a devolutive appeal, which had not the effect by the law of the State to suspend proceedings, afterwards reversed by the appellate tribunal because the reasons given by the court below were erroneous, but making a like decree, does not restore the corporation as to intermediate acts done in pursuance of the prior forfeiture, so as to render the judgment by default in foreign attachment valid.

ERROR to the District Court for the city and county of *Philadelphia.*

The plaintiff below, Jacob Little, a citizen of the State of New

York, issued a foreign attachment in the court below on the 23d March 1842, against the Atchafalaya Railroad and Banking Company as defendant (a corporation in New Orleans incorporated by the laws of Louisiana), which was served the same day on the Farmers' and Mechanics' Bank of Philadelphia, as garnishees, who then had funds to the amount of $11,411.30 in their possession, the property of the defendant in the attachment. According to the practice of the court the plaintiff obtained judgment on the 10th December 1842 against the Atchafalaya Railroad and Banking Co. as defendant in the attachment, and had their damages assessed at $10,485.19. To March Term 1843 the plaintiff issued a *scire facias* against the Farmers' and Mechanics' Bank as garnishees, who appeared and answered interrogatories and pleaded, and the cause was tried by a jury. The Farmers' and Mechanics' Bank declined paying over to the plaintiff the amount of his debt at the instance of other claimants, who came in and alleged that these funds were not when attached the property of the Atchafalaya Railroad and Banking Company. The first claimant was Thomas P. Stanton, who held a check drawn by the cashier of the Atchafalaya Railroad and Banking Co., on the Farmers' and Mechanics' Bank, in his favour, dated March 8th, 1842, and presented at the bank on the 22d March 1842, but payment was refused until indemnity was obtained. It was, however, contended, and evidence given to show, that Thomas P. Stanton was the mere agent of the Atchafalaya Railroad and Banking Company; and if so, the court instructed the jury it would not defeat the attachment.

But there was another claim on the part of certain commissioners appointed by the State of Louisiana, who alleged that these funds passed to them or were in their charge prior to the 23d March 1842, in trust for certain persons under the laws of that State. It was shown that on the 9th March 1842 the Attorney-General of Louisiana, acting under the 15th section of an Act of Assembly of 7th March 1842, presented a petition to the District Court for the first judicial district of the State of Louisiana, alleging " that in the month of March, A. D. 1835, the Legislature of the State of Louisiana passed a law to incorporate the Atchafalaya Railroad and Banking Company, with a capital of two millions of dollars, divided into shares of one hundred dollars each; that in virtue of said Act of incorporation the said stock was subscribed and the said Company commenced banking operations; that the charter of said corporation was granted on the express and implied condition that said company shall not at any time suspend or refuse payment in lawful money of the United States, of any of its own notes, bills, obligations, or any money received upon deposit by said bank; and that if any such suspension or refusal of payment shall continue for more than ninety days, the said charter shall be

*ipso facto* forfeited and void. That the obligation to pay and redeem its notes, obligations and deposits in specie or constitutional currency, is not only expressly imposed by the Act of incorporation of said company, but results likewise from the very nature of every charter granted by the State to a banking institution. Now your petitioner avers that the said Atchafalaya Railroad and Banking Company did, in violation of its charter, on or about the 13th day of May 1837, suspend and refuse payment in lawful money of the United States of its own notes, bills, obligations, and of money received upon deposit by said bank, which suspension and refusal to pay as aforesaid, continued until the 26th day of December 1838: that afterwards, to wit, in March 1839, the Legislature passed an Act to relieve the banks of the State from the forfeiture incurred by them by the suspension of specie payment aforesaid; that by the third section of said law it was made the duty of the banks of the city of New Orleans, and among others of the Atchafalaya Railroad and Banking Company, to settle and pay the balances due by it to any of the other banks of the city of New Orleans every Monday morning, in gold or silver; and to publish on the first Monday of each month, in at least one of the newspapers of the city of New Orleans, a statement showing the gross amount of its circulation, deposits, and the amount of specie in its vaults; that the remission of the forfeiture incurred by the suspension and refusal of specie payment aforesaid was granted by the State on the express condition that said bank should comply with the obligations imposed by the 2d and 3d sections of the law just referred to, and that said bank should not in future suspend and refuse specie payment; that in violation of the obligations thus imposed, and in open violation of its charter, the said Atchafalaya Railroad and Banking Company did not settle and pay the balances due by it to the other banks of the city of New Orleans every Monday morning, in gold or silver, and did not publish, as it was bound to do, a correct and faithful statement on the first Monday of each month, showing the gross amount of its circulation, deposits, and the amount of specie in its vaults, and said Atchafalaya Railroad and Banking Company did, in violation of its charter, on or about the 19th October 1839, a second time suspend and refuse payment in lawful money of the United States, of its own notes, bills, obligations, and money received upon deposit by said bank; which suspension and refusal to pay as aforesaid, continues and is persisted in by said company up to the present time; that the affairs of said Atchafalaya Railroad and Banking Company have been mismanaged so as to reduce said corporation to a state of insolvency; that the aforesaid illegal and tortious acts and doings on the part of said Atchafalaya Railroad and Banking Company constitute a gross abuse of its corporate privileges, and a violation of the conditions and obligations

VIII.—27     s *

[Farmers' and Mechanics' Bank v. Little.]

imposed by its charter, to the great injury and damage of the good people of this State; that by reason and in consequence of the premises the said Atchafalaya Railroad and Banking Company has forfeited its charter; and your petitioner has a right to have said forfeiture decreed by this honourable court against said corporation; that on account of the insolvent circumstances of said bank, and the mismanagement of its affairs, it is necessary for the protection of the creditors of said corporation that its assets and property should be sequestered and placed in the possession of the Board of Currency, according to the 15th section of an Act entitled " an Act to amend an Act entitled an Act to revive the charters of the several banks located in the city of New Orleans, and for other purposes; approved February 5th, 1842."

Wherefore, your petitioner respectfully prays that the Atchafalaya Railroad and Banking Company may be cited to appear and answer this petition, and show cause, within ten days from the service of this petition, why a decree should not be rendered by this honourable court declaring the charter of said company forfeited, and said corporation extinct; and that after due proceedings had, judgment be rendered against said Atchafalaya Railroad and Banking Company, decreeing its charter forfeited and said corporation extinct: that a writ of sequestration issue, commanding the sheriff to sequester all the property and assets of said company, and to place the said assets and property into the possession of the Board of Currency, in conformity to the provisions of the 15th section of an Act to amend an Act entitled "an Act to revive the charters of the several banks located in the city of New Orleans, and for other purposes," approved February 5th, 1842. And your petitioner prays for all such orders as may be required by the laws providing for the liquidation of banks, the charters of which have been forfeited; and your petitioner prays for all such other and further aid, relief and remedy, as the nature of the case may require and the law will permit, and your petitioner will ever pray, &c.

The court thereupon on the same day made the following·

### ORDER.

The court being satisfied from the evidence adduced that the interest of the State of Louisiana and of the creditors of the Atchafalaya Railroad and Banking Company requires that all the property and assets of said institution should be sequestered; it is therefore ordered, that a writ of sequestration issue, as prayed for and according to law, commanding the sheriff of the District Court of the first district, to sequester all the property and assets of said company, and to place the said assets and property in the possession of the Board of Currency, according to law.

A writ of sequestration immediately issued, and return was made thereon as follows:

FIRST JUDICIAL DISTRICT COURT.

State of Louisiana,
*v.*
Atchafalaya Railroad and Banking Company.

The State of Louisiana to the Sheriff of the District Court of the 1st District—Greeting.

You are hereby commanded, in the name of the State of Louisiana, and of the first Judicial District Court of said State, to sequester and deliver over to the board of currency, in conformity with the 15th section of an Act of the Legislature of this State, entitled, an Act to amend an Act entitled " An Act to revive the charters of the several banks located in the city of New Orleans, and for other purposes," approved February 5th, 1842, all the bank, and all the assets and property of the Atchafalaya Railroad and Banking Company, and what you do on the premises, you make return thereof, together with this writ, to our said court, on or before the 4th Monday of April next. Witness the honourable A. M. Buchanan, judge of our said court, this 9th March 1842, &c.

RETURN.

Received 9th March 1842. And on the same day sequestered and took into my possession the bank, and all the assets and property of the Atchafalaya Railroad and Banking Company; and owing to the nature of said assets, it was impossible to make a detailed inventory thereof at the time, and in order to make everything secure and safe, I immediately placed all said assets under seal, in the presence of the board of currency, who at the same time affixed their seal thereon, with the exception, however, of such notes and bills as were near, which were handed over to the Board of Currency, with a detailed list thereof; and when the commissioners were appointed, I attended from day to day, together with the Board of Currency, to the inventory taken by William Christy, Esq., Notary Public, and delivered over from time to time to said Notary, through the said Board of Currency, the whole of said assets, and saw them regularly inventoried. I also assisted at the registry and cancelling of all the notes of the said Atchafalaya Railroad and Banking Company, found in the banking-house, as well as to the destruction of the plates. I annex hereto a schedule of said assets, containing also the amount and denomination of the bank notes cancelled and destroyed. Returned June 18th, 1842.

[Signed]     S. BLOSSMAN, *Deputy Sheriff.*

On the 11th March 1842, the Atchafalaya Railroad and Banking Company filed the following answer to the petition:

To the Honourable the Judge of the District Court in and for the First District of the State of Louisiana.

The answer of the Atchafalaya Railroad and Banking Company to the petition of the State of Louisiana, respectfully shows, That without admitting or denying the facts averred in said petition, or the legal consequences charged as resulting therefrom, they say, that by the act of incorporation of said company they were invested with all the rights and powers necessary for the construction, &c., of a certain railroad, described in the 8th section of said act of incorporation, which said section provides, that if the said road shall not be commenced within two years, and shall not be finished in seven years from the passage of said act, then the same shall be null and void.   These respondents confess and admit that said railroad has not been completed, and that the period allowed for completing the same has expired since the filing of the said petition.   That your respondents finding themselves unable to complete said railroad, have deemed it advisable to elect the alternative provided for by said Act of incorporation, of forfeiting their charter, and do consent that the same be declared null and void, as provided therein.   Wherefore they pray that such further proceedings be had in the premises as may be conformable to law.

On the same day, judgment was rendered as follows:

State of Louisiana,
         *vs.*
The Atchafalaya Railroad and
     Banking Company.

This cause having been this day submitted to the court, and the court considering the pleadings in the case, and it appearing that the defendants confess their charter to be forfeited by their omission to complete a railroad from the Mississippi river to Opelousas, within the time limited by the said charter; considering further, that the Act of the Legislature, which is intended to prescribe the formalities to be observed for effecting the forced liquidation of banks in this State, has not yet been promulgated in the official Gazette: It is adjudged and decreed that the charter of the Atchafalaya Railroad and Banking Company is forfeited, and that the said corporation be dissolved.   And it is further decreed, that the property and assets of the said corporation remain under the administration of the Board of Currency, until the further order of the court, and that the costs of the suit be paid out of such assets.

Judgment rendered 11th March 1842.

Signed by consent, 15th March 1842.

     [Signed]                     A. M. BUCHANAN, Judge.

[Farmers' and Mechanics' Bank v. Little.]

In March 1842, three commissioners were appointed for the liquidation of the company under the Act of 14th March 1842. No appeal from the judgment of the District Court was entered within 10 days; but on the 1st March 1843, nearly a year after the judgment, an appeal was entered by L. J. Wilson, a creditor of the bank. The appeal was allowed, and bail given. This appeal was a *devolutive* appeal, under the law of Louisiana as distinguished from a *suspensive* appeal, which should have been under stricter forms entered within 10 days after the judgment.

The following proceedings then took place in the Supreme Court of Louisiana upon the appeal.

The State of Louisiana,    ⎫
        *vs.*        ⎬    No. 5205.
The Atchafalaya Railroad and  ⎰ Supreme Court of Louisiana.
   Banking Company.      ⎭

Points presented by the appellant, L. J. Wilson.

1. That the time for making the railroad had not expired when the petition was filed.

2. Nothing happening, or to happen thereafter, could be taken into consideration in deciding this case.

3. The President and Directors had no power to admit and confess away the incorporated rights of stockholders; their authority is limited by the Act of incorporation to the custody and management of the funds and effects of the bank.

4. The corporators, each for himself, alone has the power to surrender his chartered privileges; no one can do it for another; it is not a matter to be decided by numbers, either in interest or by numbers.

5. An act of incorporation can only be adjudicated and forfeited on proof.

6. Omitting to perform a duty prescribed by an act of incorporation may form a good reason for restraining the exercise of the banking privileges, and not justify such a dissolution of the incorporation as to cause a change in the form of the whole proceedings for collecting the debts due the bank, and regulating its affairs, otherwise it might become necessary to insert in them all the names of each and every stockholder: for the above reasons, the judgment of forfeiture should be reversed.

State of Louisiana,    ⎫
      *vs.*       ⎬    No. 5205.
The Atchafalaya Railroad and  ⎰ Supreme Court of Louisiana.
   Banking Company.      ⎭

The District Court for the First Judicial District decreed, on the 11th March 1842, the forfeiture of the act incorporating the defendants, on the petition of the plaintiffs, filed on the 9th of same month, (but not for any of the reasons set forth in the peti-

[Farmers' and Mechanics' Bank v. Little.]

tion, they not having been admitted, or inquired into), the attorney for the board of directors of said institution admitting that the time limited for making a certain railroad would soon expire, (but had not expired at the time the petition was filed), and that the road had not been made, and therefore consented to the forfeiture.

The appellant, one of the corporated parties, or stockholder in the institution, appeals from the aforesaid decree of forfeiture, insisting, that however near its termination was the period limited for the making of the road, it was not competent for the court to anticipate the fact, nor was it competent for the board of directors to confess away the rights of the stockholders, much less their counsel to have done it; the appellant contends that it was not competent for any number of stockholders to have done that; that each stockholder has vested rights which cannot be impaired or surrendered without his consent; such rights are not of a character to be controlled or sacrificed by a majority, either in interest or numbers, nor by both united, except by the observances of the statutes made and provided for that purpose.

The law points out how acts of incorporation for banking purposes may be surrendered by a fixed number of stockholders, and also how the same may be put into forced liquidation; none of the provisions of this law have been acted upon, except by the filing of the petition, which became a dead letter, so far as the judgment appealed from is concerned, as it was not made the basis of the judgment.

The appellant further insists that it was not competent for the court below to take cognizance of anything not averred in the petition. That it avails nothing to say that as the forfeiture would certainly take place at an early day, it would be the same thing to adjudicate it in anticipation, and thereby save the parties the trouble of new proceedings. As well might it be said, that because a man was sick of an incurable disease, which would terminate his life in a few days, it would be better to put him to death to save the trouble of longer nursing him.

The whole principle of our jurisprudence is based on the necessity for regular proceedings before adjudication, and if they be dispensed with in one case, there will not be any known stopping place.

The Legislature were in session, they might have granted further time for making the road, or they might have passed a relief bill; they had that very month passed a bill relieving the bank in question, and all other banks of the State, from the forfeiture which they severally had incurred; among the provisions of the law for the voluntary surrender of the bank charters, is to be found that of notice, and it is made the duty of the directors to convene a meeting of stockholders to deliberate on the question: no such notice was given, no such deliberation had, and the rapidity with

which these proceedings were hurried through, forbids the idea that the parties interested knew what was going on.

The Act of incorporation prescribes the duties, and limits the power of the directors; it is to manage the affairs of the institution, not to surrender the charter, or destroy the bank, and it is not pretended that the counsel had any other authority than that derived from the directors, whose duty it was to have surrendered the trust to the stockholders, when they could not longer manage it for their benefit, in place of which they have unlawfully combined with others, to place it in the hands of strangers, who had no interest therein, and who continue to control the concerns of this bank, without allowing the stockholders any voice therein.

The appellant further contends, that none of the laws passed for the liquidation of the banks, authorize the proceedings which have been had in this case, nor was the Legislature competent to deprive the parties interested of all voice in the management of the concern.

Supreme Court of the State of Louisiana. Monday, May 29th 1843. The court met. Present, their honours, F. X. Martin, Henry A. Bullard, A. Morphy, E. Simon and Rice Garland.

The State of Louisiana *v.* The Atchafalaya Railroad and Banking Company. L. J. Wilson, appellant. No. 5205. Appeal from the First Judicial District Court.

In this cause, the court this day delivered their opinion in writing, in the words and figures following:

One of the stockholders is appellant from a judgment of the District Court, which declares the charter of the Atchafalaya Railroad and Banking Company forfeited, under the following circumstances: On the 9th of March 1842 the Attorney-General presented the State's petition, charging the corporation with having neglected and refused to pay its notes and other obligations in specie, for a period of more than ninety days; with so having mismanaged its affairs and abused its corporate franchises as that it had become insolvent; and, in fine, with having so violated its charter that the same was justly forfeited; and he prays that such forfeiture may be declared by a judgment of the court. Citations were issued and served on the same day, but not returned until the 12th of March. On the 11th the president and directors answered that, without admitting or denying the facts averred in the petition or the legal consequences charged as resulting therefrom, they say that by the Act of incorporation they were invested with the powers necessary for the construction of a railroad, described in the 8th section of the Act, which provides, that if the said road shall not be commenced within two years, and shall not be finished in seven years from the passage of the Act, the same shall be null and void. They confess and admit that said railroad has not been completed, and that the period allowed for completing it

has expired since the filing of the petition in this case; that the respondents, finding themselves unable to complete said railroad, have deemed it advisable to elect the alternative provided by the Act of incorporation, of forfeiting their charter, and do consent that the same be declared null and void, as provided therein. Upon this remarkable confession, the court pronounced judgment on the same day, declaring the charter forfeited on account of the neglect of president and directors to complete the railroad. The judgment is silent as to any other ground or cause of forfeiture. It was signed on the 15th.

We are of opinion the court erred. The president and directors were incompetent, without the consent of the stockholders, to confess a forfeiture, and thus abandon an act of incorporation, which it was their duty to administer for the interest of the stockholders. They had no authority, by a voluntary act or confession, to surrender the charter of the corporation. This confession is the more remarkable and unjustifiable, as, by an Act of the Legislature, approved on the 5th of February previous, it was provided, that if any bank had constructed and completed any public works or improvements, such bank may retain its corporate powers, and all other privileges conferred by its charter, so far only as the continuance of such powers and privileges may be necessary, to enable it to retain the property in such works and to manage and carry on the same, &c. The 7th section contains a proviso, relating expressly to the railroad in question, to wit: "That nothing in this section shall be construed to release the Atchafalaya Railroad and Banking Company from making the railroad imposed by its charter, *except so far as the State is concerned,* on condition," &c. (Acts of 1842.) By this we understand that the stockholders had still a right to require the road to be constructed, notwithstanding a forfeiture of the banking privileges of the corporation.

It is not unworthy of remark, at the same time, that there was then pending an action by a number of stockholders to compel the board of directors to proceed with the work required by the charter; in answer to which the directors admitted that they had commenced operations and expended considerable sums. This suit is now pending on appeal in this court. The judgment, based upon these unauthorized confessions and admissions, is, in our opinion, erroneous, but the defendants in their answer do not deny the allegations and grounds of forfeiture set forth in the petition. They are to be taken as true, unless denied, and they are clearly sufficient in law to authorize a judgment of forfeiture.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be avoided and reversed; and proceeding to render such judgment as ought, in our opinion, to have been given below, it is further ordered and decreed, considering the neglect and refusal of the defendants, during more than ninety consecutive days, to pay their obligations in specie, whereby their charter was

liable to be declared *ipso facto* forfeited, that the same be and is hereby declared to be forfeited. The costs in both courts to be paid by the defendants.

There was a petition to the Supreme Court for a rehearing, which was refused.

The Act to incorporate the Atchafalaya Railroad and Banking Company was passed on the 10th March 1835, the object of which was to make a railroad from a point on the bank of the river Mississippi, in the parish of Point Coupée, to a point at or near the court-house in the parish of St. Landry, and they were invested with banking privileges. By a clause in the 8th section it was provided that if the said railroad shall not be commenced within two years, and shall not be finished in seven years from the passage of this Act, then this Act shall be null and void. By section 22, if any suspension or refusal of payment shall continue for more than ninety days, this charter shall be *ipso facto* forfeited and void.

On the 5th February 1842 an Act was passed to revive the charters of the several banks located in the city of New Orleans, and for other purposes. This provided, among other things, for a Board of Currency with extensive supervisory power over the city banks. On the 7th March 1842 an Act to amend the Act of 5th February 1842 was passed, the 15th section of which is as follows:

"That when the Attorney-General institutes proceedings against any bank or banks, in virtue of the present Act, or the Act to which this is an amendment, and shall deem it necessary to apply for an order or writ of sequestration, or injunction, or other conservative order, the court may grant said orders or writs on the simple petition of the Attorney-General, without requiring any oath or security: *Provided*, the court before which the proceedings are pending shall be fully satisfied that the issuing of said writ is necessary for the protection of the State or the creditors of said bank; and the defendant or defendants in said suit or suits shall not be authorized or have the right to have said orders or writs set aside by giving bond and security, as in ordinary cases; and said orders and writs shall continue and remain in full force until the final decision of the case; and the property sequestrated shall be placed in the possession of the Board of Currency, who shall be authorized, until a decree shall have been rendered, to preserve the property sequestrated, and to execute all conservative acts in relation thereto; and all civil actions brought by the Attorney-General against any bank, under this Act, or the Act to which this is an amendment, shall be tried without the intervention of a jury, and shall have the preference to be tried before all other cases, both in the first instance and on the appeal."

On the 14th March 1842 an Act was passed to provide for the liquidation of banks. The 7th section provides "That in all cases, when an appeal shall be taken from any decree annulling the

[Farmers and Mechanics' Bank v. Little.]

charter of a corporation, said appeal shall be taken up with the least possible delay, and shall be tried by preference; but said decree shall be provisionally executed, so far as to enable the commissioners to take possession of the property and assets of the bank, and to do and perform all needful and conservatory acts."

The appointment of commissioners is provided for in the 9th section, which is as follows:

"That the commissioners shall be appointed as follows:—In case of forced liquidation, one shall be appointed by the court, one by the governor, and one by the presidents of the banks that are bound to receive the circulation; and in case of voluntary liquidation, one shall be appointed by the governor, one by the stockholders at their meeting to decide of the surrender, and one by the presidents of the banks aforesaid; that whenever banks having branches in the country shall go or be forced into liquidation, the board of directors of such branches in office at the time may represent the said commissioners in matters appertaining to the liquidation of the said branches, so far as may be necessary, but under the control and supervision of said commissioners : *Provided* that the choice of said commissioners, as far as practicable, may be selected among the stockholders of the liquidating bank."

Their powers and authorities are set out in the 12th and 13th sections, as follows:

Section 12. That the commissioners appointed under this Act shall forthwith demand and receive from the board of directors of the bank, or such officer or officers as they may delegate for that purpose, all the property and effects of every description thereunto belonging, and all books, accounts and papers thereunto pertaining; and any officer who shall refuse to deliver up such effects, or books, accounts and papers, or shall wilfully offer any obstruction in the way of said commissioners, with a view to prevent them from taking possession thereof, or shall wilfully retain or conceal any such property, effects, books, accounts or papers, shall be imprisoned by order of court until he delivers up the same, or until he shall cease to offer such obstruction; and in case of fraudulent embezzlement or destruction of any such effects, books, accounts or papers, said officer or officers shall, on conviction of such offence, be imprisoned for a term not less than three months nor more than twelve months.

Section 13. That at the time the commissioners shall take possession of the property and effects of a bank, it shall be their duty to cause an exact inventory of such property and effects to be made by a notary public, in the presence of the officers of said bank, delivering up the same. It shall also be the duty of the said notary, at the time of making the inventory of the property and effects of a bank, immediately and on the spot to cancel and destroy, under the inspection of the commissioners and of the Board of Currency, all the notes of such banks, which may be on hand at

the time, even those not yet completed, if such there be, and this in the presence of two witnesses and of the officer and officers of the bank, if any be present, of all which mention shall be made in the inventory.

Several questions were discussed in the court below, in which the court charged as to the effect of the different decrees and the right acquired by the commissioners to these funds in Pennsylvania by virtue of the proceedings in Louisiana : but the court held that the claim attached did not pass to the commissioners because it had not been delivered over to them, nor was in their possession prior to the attachment, nor had previous notice of the transfer been given to the Farmers' and Mechanics' Bank : and under these circumstances the courts of Louisiana would not hold that these proceedings passed the property so as to defeat an attaching creditor, nor would the courts here. They also charged that the forfeiture of the charter would not, under the actual circumstances, operate such an extinction of the Atchafalaya Railroad and Banking Company as to defeat the attachment levied in Philadelphia.

*Law* and *Williams*, for the plaintiff in error.
*H. D. Gilpin*, contra.

The opinion of the Court was delivered by

GIBSON, C. J.—It is said the garnishee of a debt may plead anything against the plaintiff in the *scire facias* that he could plead against his own original creditor, except that the debt is not presently demandable; and even that may be pleaded by him in stay of execution. In no other respect does the attaching creditor stand on other ground than that of the creditor for whom he has been substituted by the attachment as a statute assignment or execution. The judgment in the attachment suit establishes no more than the existence of the debt claimed by the attaching creditor from his immediate debtor; and the garnishee may therefore plead either that he owes nothing to any one, or that the ownership of the debt demanded from him had passed from his immediate creditor by assignment when the attachment was laid, or that the attachment had been dissolved by his death before final judgment. In *Walker* v. *Gibbs*, (2 *Dall.* 211), he was allowed to plead a prior assignment; and he may for the same reason plead a prior attachment. (*Serg. on Attach.* 101, *Priv. Lond.* 254). It never has been doubted that the defendant's death before final judgment dissolves an attachment; and it was said by Mr Lewis, arguendo without contradiction, in *Ludlow* v. *Bingham*, (4 *Dall.* 60), that the effect is not prevented by an interlocutory judgment, because there are no longer the proper parties. Indeed Mr Dallas expressed a doubt in a note appended to his report of the case, whether death is not a dissolution of the suit even after final judgment; which was not resolved till the point came up in *Fitch* v.

*Ross,* (4 *Serg. & Rawle* 557), when it was held that it was not, as the defendant's representatives may come in and disprove the debt. Now as the garnishee can pay safely only on compulsion, he is bound to contest every inch of the ground; and that he is competent, as a stranger, to take collateral advantage of irregularities in signing judgment in the attachment suit, was ruled in *Pancake* v. *Harris,* (10 *Serg. & Rawle* 109). But the primary intent being to procure an appearance, a foreign attachment is dissolved the instant the defendant has appeared or lost his capacity to appear, because the law exacts not impossibilities; and this shows that the attaching creditor gains no property in the thing by laying the attachment. It is security for the defendant's appearance merely; and it is released as soon as the condition has been performed or become impossible. It results that the important, perhaps the only necessary question, is whether the attachment was dissolved before final judgment in it, by the civil death of the defendant; for if the Atchafalaya Railroad and Banking Company stood dissolved by judgment of forfeiture in the court of first instance, the judgment by default in the attachment suit was erroneous; and the agreement filed in the *scire facias* suit is broad enough to let it in without pleading it as matter of defence.

Judgment in the attachment suit here was signed on the 10th December 1842; and the petition for judgment of forfeiture had been filed in the court of first instance at New Orleans, the 9th March in the same year. A citation and writ of sequestration instantly followed; and the corporation put in its answer the next day, confessing the forfeiture of its charter for failure to complete its railroad in the time limited by the act of incorporation; whereupon the court instantly adjudged that the charter be forfeited for the fact confessed; that the corporation be dissolved; and that its property be put under the administration of the Board of Currency. This judgment was pronounced ten months before judgment of default was signed in the attachment suit, and it remained intact, not only till then, but till nearly three months afterwards. On the 1st March 1843, a creditor of the corporation was allowed to appeal from it on an allegation of error, and on giving the requisite bail. By the laws of that State, it seems, a suspensive appeal which prevents the judgment from going into effect, must be taken within the space of ten days; a devolutive appeal which has no suspensive effect, may be taken at any time within a year. The judgment of the court of first instance had been pronounced on the tenth of March 1842; so that there was barely time for a devolutive appeal. It is seen therefore that when judgment was signed in the attachment suit, the defendant was defunct by the sentence of a court of competent jurisdiction, not only unsuspended, but actually unappealed from at the time; its charter was annulled; its corporate existence extinguished; and what remains is to inquire whether these were subsequently restored, and the cor-

poration's intermediate existence judicially established as if there had been no forfeiture, by the subsequent action of the Supreme Court.

The judgment of forfeiture was reversed for no vice in itself, but for a mental abstraction of the judge; and a common law student would be disposed to ask, why reverse because the judge thought wrong if he acted right; or for an abstract error which did no harm? or why sweep away the sequestration with the intermediate acts of the Board of Currency and its successors by unravelling the web to take up a dropt stitch which did not injure the texture? He might doubt, too, whether the simultaneous repetition of the same judgment, though based on a different abstraction, were not a substantive affirmance which left the original judgment, the writ of sequestration, and all things done by virtue of it, exactly as it found them. However that may be, it is certain the judgment of forfeiture and corporate extinction, was in force when the corporation was defaulted for want of appearance in the attachment suit; and what was the effect of its reversal on the proceeding here?

That question is determinable by the law of the forum, not of the place. The law of Louisiana might possibly restore the dead to life there, but not elsewhere; and though the reversal of a judgment of dissolution may cure the want of an intermediate capacity to sue and be sued in the courts of that State, it cannot cure the want of such a capacity in the courts here. What then is the effect of such a reversal at the common law?

The rule laid down in *Drury's Case*, (8 *Rep.* 142 *b*), is that collateral things executory stand as if the reversed judgment had never been in force; but that collateral things executed are not devested. It was consequently held that the reversal of a judgment against a debtor in execution, is no reversal of a judgment against the sheriff or gaoler for his escape. In *Appesley* v. *Ive*, (*Cro. Jac.* 645), it was held that the reversal of judgment against a principal is no reversal of judgment against his bail. The principle has been established by many decisions; and it leads to the inevitable conclusion that the reversal of the judgment which had dissolved the foreign attachment by dissolving the existence of the defendant, did not restore it to the case of an action pending by relation to the time when the defendant in the attachment was defaulted, or make the judgment against him the less a judgment against a party defunct. The attachment therefore was as effectively dissolved, at the time, by the extinction of the defendant's corporate existence, as if its civil death had been suggested on the record, for there was no party in court to suggest it, and the plaintiff himself proceeded on that ground when he signed judgment for default. The attachment was therefore at an end, and the plaintiff's hold on the property gone. This view of the case relieves us from considering how far it was vested in the Board

T *

of Currency, or its successors, the commissioners, by the proceedings in Louisiana; or how far it was privileged from attachment as being in the lap of the law. If the attachment were legal in the first instance, it ceased to be so at the termination of the defendant's civil existence; and this is all that is necessary for the decision of the cause before us.

Judgment reversed, and a <em>venire de novo</em> awarded.